723 So.2d 500 (1998)
STATE of Louisiana
v.
Curtis Paul ROBERTSON, Defendant-Appellant.
No. CR98-883.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
Rehearing Denied February 3, 1999.
*501 Bernard E. Boudreaux, Jr., D.A., and Robert C. Vines, A.D.A., for State of Louisiana.
Warren Ashy, Lafayette, for Curtis Paul Robertson.
Before COOKS, SAUNDERS and WOODARD, JJ.
WOODARD, Judge.
Curtis Paul "Coon Dog" Robertson (the defendant) was charged with second degree battery, a violation of La.R.S. 14:34.1. At the close of trial, a six-person jury found him guilty as charged. He was subsequently sentenced to four years at hard labor and appeals, alleging five assignments of error. We affirm and remand with instructions.

*502 FACTS
The defendant was arrested for the battery of Ms. Pauline Catorie on April 22, 1997. They have maintained a tumultuous relationship for nineteen years. Prior to the incident, they lived in New Iberia, Louisiana with their two daughters, Sarah, eight, and Elizabeth, seven.
On April 22, 1997, Ms. Catorie was driving back from the baseball park on Dubois Road with her daughters when she encountered the defendant. When he questioned her about her whereabouts, she explained that she had just left the baseball park. He responded that he had not seen her car and that he wanted to talk to her at his home within the next half-hour.
Ms. Catorie drove to his home where she waited for a half-hour. Then, she and her daughters left the house to get some hamburgers, the promised reward for winning the ball-game. On her way, she met the defendant at the White Oaks Grocery Store. He told her to meet him at the house and to make sure that the children were somewhere else. Ms. Catorie and her daughters returned to the house, and he followed, forty minutes to one-hour later.
Apparently, he was upset when he arrived home. He asked Ms. Catorie to follow him into "the shop," where he asked her if she had slept with one of his best friends, some ten years ago, while they were separated. Ms. Catorie answered in the affirmative. He called her names, and she slapped him. Angry, the defendant hit and kicked her, causing her to fall and strike her head on a magazine rack. He kept kicking and punching her to the point that she momentarily lost consciousness.
Once Ms. Catorie came back to her senses, the defendant stated that he was disappointed in her and ordered her to take off her clothes, which were covered with blood. He directed himself to the washing machine and told Ms. Catorie to clean up her own blood, which had dribbled onto the floor from his beating. He warned her that she had better have it done before he got back.
Later that day, Ms. Catorie was treated by Dr. Steven James Ritter at the emergency room of Dauterive Hospital. Dr. Ritter found a large laceration of approximately three inches on her forehead and scalp. Seven stitches were required. He also noticed a laceration over the bridge of her nose and bruises over both her arms and legs. He commented that the traumas were the result of very hard blows.
The defendant was arrested on April 22, 1997, and charged by Bill of Information with second degree battery, a violation of La.R.S. 14:34.1, on June 6, 1997. The trial was held December 2-4, 1997. During trial, the court denied the defendant's motion for mistrial, made prior to closing arguments, as well as a motion for a directed verdict of acquittal, made after the presentation of the state's case. At the close of trial, a unanimous six-person jury returned a verdict of guilty as charged.
Pursuant to a hearing held on January 8, 1998, the trial court sentenced the defendant to four years at hard labor. The defendant appeals.

ASSIGNMENTS OF ERROR
The defendant asserts the following assignments of error:
1. The trial court erred in not allowing Pauline Catorie to testify as to her observations concerning the defendant's actions.
2. The trial court erred in refusing to grant the defendant's motion for mistrial.
3. The trial court erred in finding that the prosecution presented sufficient evidence to conclude that Pauline Catorie received serious injury.
4. The trial court erred in finding that the defendant had the specific intent to inflict serious injury on Pauline Catorie.
5. The trial court erred in denying the defendant's request to have the jury instructed of his defense based on the aggressor doctrine.

*503 LAW

ERRORS PATENT
At the outset, we find that the trial court did not inform the defendant of the three year time limitation to file for post-conviction relief, as mandated by La.Code Crim.P. art. 930.8. However, such a defect has no bearing on whether the sentence is excessive, and the defendant was not prejudiced because the prescriptive period does not start running until the judgment becomes final. La.Code Crim.P. art. 922. Thus, we need not reverse the sentence or remand the case for resentencing. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).
Nevertheless, we direct the trial court to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by appropriate written notice within ten days of the rendition of this opinion and to file into the record of the proceeding written proof that the defendant received this notice. Id.
Preclusion of a Line of Questions at Trial
The defendant alleges that the trial court erred in sustaining the objections made by the state to a certain line of questions in Ms. Catorie's cross-examination. More specifically, he argues that the court should have allowed Ms. Catorie to give her opinion regarding the defendant's intent to inflict serious bodily injury. He asserts that such a right is mandated by La.Code Evid. arts. 701 and 704 and concludes that the denial of it was a ground for mistrial.
The issue raised in this assignment of error pertains to the power of the trial court to control the examination of the witnesses. We acknowledge that an accused has a constitutional right to confront and cross-examine hostile witnesses. La. Const. art. I § 16; La.R.S. 15:273. Nevertheless, we also note that such a right is not unlimited or absolute. State v. Thames, 95-2105 (La.App. 1 Cir. 9/27/96); 681 So.2d 480, writ denied, 96-2563 (La.3/21/97); 691 So.2d 80; La.Code Crim.P. art. 930.8. Furthermore, it is well-settled that the trial court has great discretion in controlling the examination of witnesses. See State v. Jackson, 568 So.2d 599 (La.App. 4 Cir.1990). We shall not disturb its rulings on such a matter, absent abuse of discretion. Id.
Concerning the admission of testimony by lay witnesses, La.Code Evid. art. 701 states:
If the witness is not testifying as an expert, his testimony on the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

(Emphasis added.)
In the instant case, the defendant was trying to have Ms. Catorie state her opinion regarding whether or not he intended to inflict serious bodily injury. The state objected, claiming that the questions were irrelevant and were for the trier of fact to decide. The trial court sustained the objection on the ground that it "should be non-helpful" to a clear understanding of the testimony.
We do not find that the trial court abused its discretion in considering the questions "non-helpful." First, she could not have known his state of mind unless he expressed it. Second, the severity of the injuries and his having kicked her to the point of unconsciousness speak for themselves as to his intent. Third, the defendant was not deprived of his right to cross-examine Ms. Catorie. Indeed, he had ample opportunity to question her assertions regarding the circumstances surrounding the incident or the incident itself.
We affirm the trial court's decision and find that our resolution of this issue in favor of the state pretermits a consideration of the defendant's second assignment of error.

SUFFICIENCY OF THE EVIDENCE
The defendant contends that the state did not bring forth sufficient evidence to prove the requirements of a charge of second degree battery. First, he argues that the state did not show that he possessed the required specific intent to commit a second degree battery. Second, he asserts that the injuries sustained by Ms. Catorie are not the kind *504 which usually give rise to a conviction for that charge.
The offense of second degree battery is defined by La.R.S. 14:34.1, as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For the purpose of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
(Emphasis ours.)
While we review whether or not there was sufficient evidence to convict the defendant for second degree battery, we are mindful of the principles set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), where the United States Supreme Court specified that the evidence shall be viewed in a light most favorable to the prosecution. In other words, we may not disturb the trial court's findings if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781.

SPECIFIC INTENT
First, the defendant contends that the state did not prove that he possessed the requisite specific intent to commit a second degree battery.
Second degree battery is a crime of specific intent. State v. Fuller, 414 So.2d 306 (La.1982). La.R.S. 14:10 defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Thus, a specific criminal intent need not be proven as fact but may be inferred from the circumstances of the case and actions of the defendant. State v. Mackey, 96-817 (La.App. 3 Cir. 12/11/96); 687 So.2d 465, writs denied, 97-1814 (La.3/13/98); 712 So.2d 865, 717 So.2d 1156; State v. Clark, 93-1470 (La.App. 3 Cir. 10/5/94); 643 So.2d 463.
After reviewing the record, we cannot say that there was insufficient evidence from which a reasonable jury could infer intent to inflict "serious bodily injury." The record reflects that the defendant ordered Ms. Catorie to return home without the children. It can be reasonably inferred that, at that time, he had planned to punish Ms. Catorie out of the presence of any witnesses. The circumstances of the incident are undisputed. Once alone, he knocked Ms. Catorie to the ground, causing her to fall with such force that she struck her head on a magazine rack, severely lacerating her forehead. After she was beneath him on the ground, he continued hitting and kicking her until she was bloody and senseless. She sustained bruises on her back, legs, buttocks, arms, shoulders, face, head, and all portions of her torso. Her facial lacerations indicated direct, closed-fisted blows.
Also revealing is the defendant's behavior immediately following the incident. While he expressed his disappointment in the victim's prior actions, he also ordered her to clean up her own blood before his return. Such action is not consistent with that of a remorseful person. Instead, it shows that the defendant remained focused on his intent to punish Ms. Catorie.
Thus, we affirm the trial court's finding of a specific intent, as required by La.R.S. 14:34.1.

NATURE OF THE INJURIES
Next, the defendant alleges that the kind of injury that Ms. Catorie sustained as a result of the beating were not the kind which usually trigger the application of La.R.S. 14:34.1. Specifically, he argues that the trier of fact must have relied on Dr. Ritter's report, stating that Ms. Catorie had a neck injury, as well as a broken nose to find the statute applicable. In fact, it was established during trial that the neck injury was not sustained as a result of the incident and that *505 Ms. Catorie's nose was never broken. Thus, the defendant asserts that the other injuries actually sustained are not the kind for which La.R.S. 14:34.1 was intended. We disagree.
La.R.S. 14:34.1 specifies the type of injuries giving rise to its application as "serious bodily injury," involving "unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death."
Although, there is a subjective component in determining whether or not a victim sustained the "serious bodily injury" described in the statute, State v. Hernandez, 96-0115 (La.App. 4 Cir. 12/18/96); 686 So.2d 92, a reasonable trier of fact had ample evidence to conclude that Ms. Catorie sustained "serious bodily injury."
The defendant knocked her to the ground and then repeatedly kicked and hit her until she "kind of lost her senses for a minute." She received a direct blow to the head consistent with being struck by an instrument or falling against something. Dr. Ritter found bruises and contusions over the entire extent of her body. He noted that she had a "very large laceration on her forehead and scalp" which required several stitches and would leave a significant scar. He also reported a "stellate laceration over the bridge of her nose." After examining the injuries, he opined that the attack was particularly violent. On a scale of one to ten, he described the injuries as being a nine or a ten.
The jury was also allowed to view photographs of Ms. Catorie, which were taken by Lt. Norman Dehart in the emergency room of the hospital. They show the cuts and lacerations on the victim's face and the extent of the bruises which covered her body, as well as protracted disfigurement.
We also note that the type of injury sustained by Ms. Catorie was not inconsistent with the type of injuries which gave rise to the application of La.R.S. 14:34.1 in relevant precedents. See State v. Legendre, 522 So.2d 1249 (La.App. 4 Cir.1988), writ denied, 523 So.2d 1321 (La.1988); State v. Accardo, 466 So.2d 549 (La.App. 5 Cir.), writ denied, 468 So.2d 1204 (La.1985); State v. Winnon, 28,654 (La.App. 2 Cir.1996); 681 So.2d 463, writ denied, 96-2576 (La.3/27/97); 692 So.2d 391.
Thus, we affirm the trial court's decision.

APPLICATION OF THE AGGRESSOR DOCTRINE
In his last assignment of error, the defendant alleges that the trial court erred in refusing to instruct the jury of a defense based on La.R.S. 14:19.
We do not find any value in this argument. The trial court has great discretion in determining whether a special instruction should be presented to the jury. To this effect, La.Code Crim.P. art. 807 provides, in relevant part:
The State and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun....
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent.

(Emphasis added.) In State v. Anderson, 390 So.2d 878 (La.1980), the Louisiana Supreme Court found that the trial court properly denied a jury instruction when it was unsupported by evidence introduced at trial. In State v. Beason, 26,725 (La.App. 2 Cir. 4/7/95); 653 So.2d 1274, writ denied, 95-1388 (La.10/27/95); 661 So.2d 1359, the second circuit upheld a trial court's decision to deny a jury instruction, made at the defendant's request, on the ground that it was not supported by evidence adduced at trial, thus not pertinent, and that it would only mislead or confuse the jury.
The aggressor doctrine is set forth by La.R.S. 14:19 and states, in part:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense....
*506 In the instant case, the trial court denied to enter such an instruction on the ground that it would mislead or confuse the jury. The defendant did not present any evidence at trial, showing that his act was justified to prevent a forcible offense, that the slap received from Ms. Catorie was the forcible offense discussed in the statute, that he retaliated to protect himself, or that the act of retaliation was reasonable and apparently necessary to prevent the offense.
For the foregoing reason, we affirm the trial court's decision.

CONCLUSION
We affirm the defendant's conviction and sentence, with instructions that the trial court notify him of the three year time limitation to file for post-conviction relief as set forth in La.Code Crim.P. art. 930.8.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.