851 So.2d 1024 (2003)
In re Joseph F. LAHATTE, Jr.
No. 2003-B-0437.
Supreme Court of Louisiana.
June 27, 2003.
Rehearing Denied September 5, 2003.
*1025 Charles B. Plattsmier, Bernadine Johnson, Baton Rouge, Counsel for Applicant.
Elizabeth A. Alston, Joseph F. LaHatte, Jr., New Orleans, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter involves three counts of formal charges, instituted by the Office of Disciplinary Counsel ("ODC") against respondent, Joseph F. LaHatte, Jr., an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS

Count I
Between May 1996 and December 1998, respondent settled approximately thirteen personal injury cases on behalf of his clients. Respondent withheld funds from these settlements in order to pay two third-party medical providers, who had rendered medical services to respondent's clients. Rather than remitting these funds to the third party medical providers, respondent commingled and converted the funds to his personal use.[1]
Robert Helferstay, an administrative support representative for the third party medical providers, made numerous efforts to contact respondent regarding the funds, but was unsuccessful. In November 1998, Mr. Helferstay filed a complaint with the ODC.
Several weeks later, respondent forwarded correspondence to Mr. Helferstay stating the total outstanding amount, $22,660.38, would be paid within thirty days. Respondent then forwarded a check from his personal account to Mr. Helferstay for the amount; however, this check was returned because respondent's account had insufficient funds. Nonetheless, respondent misrepresented to the ODC that the past due balances had been paid in full.

Count II
On November 20, 1998, respondent issued a check from his "cost account" to a third party medical provider in the amount of $2,401.43, representing payment for medical services rendered to respondent's client, Rhonda Johnson. When the provider presented the check for payment two months later, it was dishonored for insufficient *1026 funds. After the provider, through Mr. Helferstay, complained to the ODC, respondent provided full payment of the amount owed.
While investigating the complaint, the ODC requested that respondent respond to inquiries relative to his use of a "cost account." Respondent conceded he commingled funds by depositing into his "cost account" funds from unaccounted sources.

Count III
In March 1996, respondent settled a personal injury case on behalf of Tina Jefferson. Respondent withheld $1,386 from his client's share of the settlement for payment to a third party medical provider.
Subsequently, Mr. Helferstay, on behalf of the provider, complained to respondent that the funds had not been paid. In January 1999, nearly three years after the case had been settled, respondent wrote to Mr. Helferstay advising Ms. Jefferson's case was still pending. Later, a dispute arose between respondent and Mr. Helferstay, based on respondent's assertion that he had in fact paid the third party medical provider. Respondent failed to place the amount of the disputed funds in trust. Respondent ultimately paid the outstanding amount, and Mr. Helferstay forwarded correspondence to the ODC requesting that his complaint be withdrawn, on the ground that respondent's accounts were current.

DISCIPLINARY PROCEEDINGS

Formal Charges
Following its investigation, the ODC filed three counts of formal charges against respondent alleging violations of Rules 1.3 (lack of diligence), 1.4 (failure to communicate with client), 1.7(b) (conflict of interest adversely reflecting client representation), 1.15(a) (failure to safeguard client and third party funds; commingling and conversion), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request), 1.15(c) (failure to place property subject to a dispute with another party in trust), 1.16(d) (failure to protect client interests upon termination of representation), 3.2 (failure to expedite litigation), 3.4(c) (failure to comply with tribunal orders), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent submitted a timely answer to the charges.

Formal Hearing
Respondent testified he commingled and converted the funds belonging to the medical providers, and that he utilized the funds for his personal use. He also conceded he technically commingled funds through the use of his "cost account" by making deposits into the account from unaccounted sources and using the funds to pay his clients' costs.
The balance of the hearing testimony from respondent and respondent's wife pertained to respondent's alcohol dependency problems and unsuccessful efforts at recovery dating back to 1992. The testimony indicated respondent's substance abuse was at its worse during the period relevant to the instant proceedings. Respondent presented the testimony of his substance abuse counselor to corroborate his assertion that he had been in treatment and sober one year at the time of the formal hearing,[2] regularly attends Alcoholics *1027 Anonymous ("AA") meetings and voluntarily entered into an ongoing recovery agreement with the Lawyer's Assistance Program ("LAP").

Recommendation of the Hearing Committee
The hearing committee concluded the ODC presented clear and convincing evidence respondent commingled and/or converted to his own use $19,892.03 owed to the medical providers, as well as commingled funds by depositing into his "cost account" funds from unaccounted sources.[3] In mitigation, the committee recognized respondent's substance abuse treatment, lack of prior disciplinary record, restitution and remorse. As a sanction, the committee proposed respondent be placed on probation for a period of five years, subject to conditions.
The ODC filed an objection to the leniency of the hearing committee's proposed sanction.

Recommendation of the Disciplinary Board
The disciplinary board accepted the factual findings of the hearing committee. It found clear and convincing evidence to support the charged professional violations, except with regard to Rules 1.4, 1.7(b) and 1.16(d) (failure to communicate, engaging in a conflict of interest and failure to protect client at termination of representation, respectively). The board concluded respondent knowingly violated duties owed to his clients, the legal system and the public, resulting in actual injury insofar as the health care providers were deprived of their funds for lengths of time ranging from one month to two years.
The board recognized as aggravating factors respondent's pattern of misconduct, multiple offenses and substantial experience in the practice of law.[4] In mitigation, it accepted the factors identified by the committee. Applying these factors, the board recommended respondent be suspended from the practice of law for a period of two years, with all but six months deferred, followed by a four-year period of probation with conditions.
Respondent filed an objection to the severity of the board's recommendation and the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992).
Respondent has not contested the factual allegations of the formal charges, and has admitted that he did not properly handle the third party funds entrusted to him. Accordingly, the record supports the conclusion that respondent violated his *1028 professional obligations by commingling and converting third party funds.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent's misconduct resulted in the third party medical providers being deprived of their funds for a lengthy period of time. These providers were required to engage in collection efforts in order to receive payment of funds due to them. The baseline sanction for such misconduct is a suspension from the practice of law.
In mitigation, respondent asks us to consider his alcoholism during the period of misconduct. He urges us to follow the approach of Louisiana State Bar Ass'n v. Longenecker, 538 So.2d 156 (La.1988) (on rehearing), and impose a period of probation, with no actual period of suspension.
In Longenecker, we recognized that while intoxication is not a defense to charges of professional misconduct, the fact of alcoholism may be an appropriate consideration in determining the mental state of the attorney and the culpability for commission of fraudulent acts. However, in the instant case, the record does not clearly demonstrate that respondent's commingling and conversion of third-party funds was a direct result of his impaired state of mind caused by his alcoholism. While we accept that respondent suffered from alcoholism during the period when the misconduct occurred, respondent admitted that he was able to satisfy other obligations of his law practice. Under these circumstances, we are not prepared to say respondent's alcoholism eliminates his culpability for the misconduct at issue in these proceedings, although we accept his condition as a factor to be considered in mitigation.
Considering the facts of this case, we conclude the appropriate discipline is a two-year suspension. However, in light of the mitigating factors we will defer all but six months of the suspension and place respondent on probation for a period of four years, subject to the following conditions:
1. During the period of probation, respondent shall continue to participate in recovery programs, including the LAP and AA;
2. Respondent shall submit quarterly reports to ODC detailing his participation in the appropriate recovery programs;
3. Respondent shall retain, at his expense, a CPA to monitor his trust and operating accounts, and shall direct the CPA to report semi-annually to ODC regarding the status of respondent's accounts.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered Joseph F. LaHatte, Jr., Louisiana Bar Roll number 8102, is suspended from the practice of law for a period of two years. It is further ordered that all but six months of said suspension shall be deferred. Following completion of the active portion of his suspension, respondent shall be placed on probation for a period of four years, subject to the conditions set forth in this opinion. Any violation of the conditions of probation or any other misconduct during the probationary period *1029 may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Respondent also mistakenly disbursed some of these funds to his clients.
[2] At oral argument, respondent attested he is currently sober, and has been at all times since September 2000.
[3] Although respondent was not charged with misconduct relative to his failure to pay his taxes, the committee also found, based on respondent's own admission, that he had been delinquent in paying taxes since 1996. He stated there was an IRS lien against him in the amount of $109,000 and a FICA lien of $86,000, on which he pays $3,000 and $5,000 per month, respectively.
[4] Respondent was admitted to the practice of law for approximately sixteen years when his misconduct began.