NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1338

STATE OF LOUISIANA

VERSUS

JOHN PRINCE

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 05-K-0525-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and J. David Painter, Judges.

AFFIRMED.

Peggy J. Sullivan, Attorney at Law
Louisiana Appellate Project
P.O. Box 2775
Monroe, LA 71210-2775
Counsel for Defendant-Appellant:
    John Prince

Earl J. Taylor, District Attorney
Office of the District Attorney
P.O. Drawer 1968
Opelousas, LA 70570
Counsel for Appellee:
    State of Louisiana

**PAINTER, Judge.**

Defendant, John Prince, appeals his conviction and five-year sentence at hard labor on the charge of aggravated second degree battery. For the following reasons, we affirm both his conviction and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2005, Defendant and the victim, Derrick Tanner, got into an altercation at a location near the Cherry Blossom Apartments in Morrow, Louisiana, just off Highway 71. Although various witnesses disagreed about the details of the incident, it is clear that Tanner suffered a stab wound near his clavicle. Tanner testified that he did not see a knife but that Defendant struck him once in the area the wound occurred, and Tanner subsequently noticed something shiny in Defendant's hand. No weapon was introduced into evidence at trial.

A bystander drove Tanner to Bunkie General Hospital. Tanner was treated by Dr. Ronald Bryce, who determined that the wound was three centimeters deep. At trial, Dr. Bryce explained that the wound went through the skin, the fat underneath the skin, and the chest muscle. He stitched inside the wound to control the bleeding. Tanner stayed in the hospital overnight, and was discharged the next day.

Defendant was charged with aggravated second degree battery, a violation of La.R.S. 14:34.7. The matter proceeded to trial by jury, which found Defendant guilty as charged. The trial court sentenced Defendant to five years at hard labor with credit for time served. Defendant filed a written motion to reconsider sentence which the trial court denied without reasons.

Defendant now appeals his conviction and sentence arguing that the State failed to prove beyond a reasonable doubt that he committed the offense of

1

aggravated second degree battery and that the sentence imposed was unconstitutionally excessive given the facts and circumstances of this case.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After a thorough review of the record, we find no errors patent.

*Sufficiency of the Evidence*

In his first assignment of error, Defendant argues the evidence adduced at trial did not support the conviction. The general analysis for such claims is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The crime at issue, aggravated second degree battery, is defined by La.R.S. 14:34.7, which states, in pertinent part:

> A. (1) Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury.

(2) For purposes of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

Defendant contends that the State failed to prove that "serious bodily injury" occurred. In *State v. Robertson*, 98-883 (La.App. 3 Cir. 12/9/98), 723 So.2d 500, *writ denied*, 99-658 (La. 6/25/99), 745 So.2d 1187, this court recognized facial lacerations and bodily bruising as "serious bodily injury" in the context of an unarmed attack. This court notes that Dr. Bryce's testimony established that the wound in this case penetrated Tanner's chest muscle and required sub-dermal stitching. As such, we find that this injury qualified as "serious" for purposes of the statute.

The remainder of Defendant's argument attacks the victim's credibility. He notes that Tanner testified on re-direct that only he and Defendant were at the fight scene. However, Kenneth Lee, a deputy at the time of the offense, testified that when he arrived at the scene, there were approximately fifteen people present. Tanner's testimony also indicated that his friend, "C.Y.," was nearby and that C.Y. also fought somebody. Thus, Tanner's testimony acknowledged, at least by implication, that there were other people in the vicinity of the fight.

Defendant also argues that Tanner "tried to skirt the truth" by failing to testify regarding a prior conviction for unauthorized use of a movable. Since Tanner testified freely on direct regarding other prior convictions, his omission regarding unauthorized use of a movable does not call into question his overall credibility.

Defendant acknowledges that he and the victim fought. However, he notes that other witnesses testified that there were a number of people at or near the scene.

Further, other men at the scene apparently got into fights, and other weapons were seen. The State did not introduce a knife at trial.

Defendant and Tanner clearly fought, and the latter man was clearly stabbed. Regarding Defendant's identity as the man who stabbed the victim, the victim and his friend Edward Gaines both testified that Defendant was the offender. Although Tanner acknowledged that he did not see the weapon, Gaines testified that he saw the weapon and the stabbing.

Defendant argues that he produced witnesses who did not see him holding a knife. Melvin Chambers testified to this effect and that there was a "big street fight." Gaines also testified that a large street fight occurred. Chambers stated that at some point, a man named Clifton Young also fought with Defendant. However, on cross-examination, Chambers testified that he did not notice Tanner bleeding. This damages Chambers's credibility since the victim clearly bled.

Shontell Prince, Defendant's niece, testified that she saw Gaines and a woman named Bridget in the area with bladed weapons of some kind but acknowledged that she did not see either of them stab anybody. Like Chambers and Gaines, she indicated that a large street brawl occurred on the night of the offense. She testified that she did not see a knife in her uncle's hand.

Marilyn Jordan also testified that she witnessed the fight between Defendant and Tanner. She did not see a knife in Defendant's hand. Further, she testified that after fighting Tanner, Defendant fought Clifton Young. After that, she saw Tanner "running around the apartments" making threats; she did not see Defendant in the area at that point. Jordan testified that when Defendant's daughters tried to move his car, Tanner threw a four-way lug wrench through the side window. According to

4

Jordan, people in the area thought Defendant was in the vehicle. Next, Tanner walked toward his own car, but then grabbed his shoulder and looked like he was about to faint. People started shouting that he was bleeding, and then took him to the hospital.

Jordan testified that she also saw Clifton Young fight a man named Larry Thomas. Apparently, she did not see Gaines get involved, but she explained that he was on the other side of the street. She did not see what, if anything, occurred on that side of the street.

Defendant testified that he and the victim fought briefly, then he fought Clifton Young. Defendant claimed that he did not stab Tanner and did not know of the stabbing until later that night.

This court finds that the evidence sufficiently identified Defendant as the offender. The victim testified that Defendant stabbed him, and Gaines testified to the same effect. The assessment of the weight and overall credibility of the witnesses was within the jury's province. On appeal, Defendant has chosen to attack the victim's credibility, but he has failed to demonstrate that the jury's assessment was unreasonable. This assignment of error lacks merit.

*Excessive Sentence Claim*

In his second assignment of error, Defendant argues that his five-year sentence is excessive. As La.R.S. 14:34.7(B) allows a maximum sentence of fifteen years, Defendant's sentence is in the lower range of what he could have received.

Defendant's motion to reconsider raised only a claim of general excessiveness. The analysis for such claims is well-established:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive

5

sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43,

*writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

As an aid to the general analysis, this court has explained:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958. In *Cook*, the defendant pled to a charge of vehicular homicide and was sentenced to serve nine years at hard labor. This court vacated the sentence as excessive on the grounds that it made no meaningful contribution to acceptable penal goals and was the needless imposition of pain and suffering. The Louisiana Supreme Court reversed and reinstated the defendant's sentence. The supreme court stated the trial court is given " 'broad sentencing discretion' " and the only relevant question on review was " 'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.' " *Id*. at 959 (quoting *State v. Humphrey*, 445 So.2d 1155, 1165 (La.1984))[.]

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*,

03-562 (La. 5/30/03), 845 So.2d 1061.

In sentencing Defendant, the trial court made the following observations:

THE COURT:     Considering the input of the defendant and the State, and the victim by way of the letter sent to the Court by the victim, which I'll address in just a second, the pre-sentence investigation and the guidelines set forth by Louisiana Code of Criminal Procedure Article 894.1, and the other applicable sentencing statutes including Revised Statutes 14:34.7, which incidently, calls for the sentence of, with or without hard labor for not more than fifteen years or both, the Court notes the following factors pertinent to this sentencing:  that the defendant is thirty-nine years of age and is classified as a third felony offender.  Therefore, he is ineligible for a probated or suspended sentence.  The defendant refused to give a statement to the interviewing agent preparing the pre-sentence investigation report.  As indicated by defense counsel, the Court has received letters from the victim in this matter, along with several other letters from other individuals herein.  The victim in his letter requested a lenient sentence for the defendant.  The victim in his letter to the Court indicates, "I know John is a very harmless person.  He also has children that are depending on him to be there, and I wouldn't want him incarcerated for a lengthy time because of his children and his mother."  Unless the pre-sentence investigation is incorrect, it indicates that the defendant has no children, so I'm not quite sure how well the victim knows the defendant.  Do you have children?

. . . .

THE COURT:     Okay.  The other letters submitted to the Court were from one of your supervisors at a former employment, a Reverend with the Baptist Church, and two other friends in that report, and the Court will label these letters, in globo, as Court Exhibit 2.

There is an undue risk that during the period of a suspended sentence or a probation that the defendant will commit another crime.  The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.  A lesser sentence will deprecate the seriousness of the defendant's crime.  There is [sic] no mitigating circumstances except for the letters aforesaid mentioned, and the defendant has shown no remorse until this date; having gone through a trial; having indicated that he did not desire to make a statement to the agent for the pre-sentence investigation report; but he, at least, today has some remorse or indicates he has some remorse to the Court.

7

Although the trial court stated that the pre-sentence investigation (PSI) report indicated that the Defendant did not have children, Defendant claimed in open court that he had seven children. Later, the trial court stated:

> THE COURT:     No, let's proceed. If he has children, he has children. All right. Accordingly, the Court sentences the defendant as follows, and based upon the victim's letter to the Court. The Court will sentence the defendant to five years at hard labor with credit for time served. The Court specifically finds that this is a crime of violence or an attempted crime of violence pursuant to Revised Statutes 14:2B. Further, the Court notes that the sentence has not been enhanced pursuant to Code of Criminal Procedure Article 893.3.

The trial court's reasoning addressed the first two *Smith* factors. This was a serious offense where the victim required hospital treatment, including subcutaneous stitching, and an overnight stay. Further, the trial court stated that Defendant was a third felony offender. Regarding the legislative purpose of the statute, it is clearly designed to proscribe the sort of conduct that occurred in this case. Added to the Criminal Code in 1997, it prohibits the use of a weapon to intentionally inflict serious bodily injury.

Regarding the final *Smith* factor, this court, in *State v. Lee*, 08-456 (La.App. 3 Cir. 11/5/08), 996 So.2d 1217, upheld a six-year sentence for a first offender, noting that victim was hospitalized for two weeks and required dialysis. In *State v. P.M.*, 00-1613 (La.App. 3 Cir. 5/2/01), 786 So.2d 857, Defendant received two concurrent sentences of twelve and one-half years for unintentionally injuring two of his children when he threw hot grease at their mother. The children were treated in an emergency room on the night of the offense. This court upheld the sentences, noting the defendant's history of violence and agreeing with the trial judge that an attack with hot grease was "barbaric." *Id.* at 861-62. Thus, Defendant's five-year sentence in the

8

present sentence is not outside the norms of Louisiana jurisprudence. Thus, we find that in light of *Smith* and *Barling*, this assignment lacks merit.

## DECREE

Finding that the evidence was sufficient to support the conviction and that the sentence imposed was not constitutionally excessive, we affirm Defendant's conviction and sentence.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.