STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 22-26

STATE OF LOUISIANA

VERSUS

ALEX FRANCISCO

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2020-CR-223152-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell and D. Kent
Savoie, Judges.

**AFFIRMED.**

**Charles A. Riddle, III**
**District Attorney, Twelfth Judicial District Court**
**Anthony F. Salario**
**Assistant District Attorney**
**P.O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P.O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Alex Francisco**

**EZELL, Judge.**

On September 25, 2020, Defendant, Alex Francisco, was charged by bill of information with aggravated second degree battery, in violation of La.R.S. 14:34.7. On October 13, 2020, Defendant entered a plea of not guilty to this charge, and trial was originally scheduled for January 11, 2021. Following several filings by the State, trial proceeded on May 12, 2021. Defendant was found guilty as charged by a unanimous jury.

On August 10, 2021, the trial court held a sentencing hearing and sentenced Defendant to fifteen years at hard labor with credit given for time served, beginning June 29, 2020. On September 17, 2021, a notice of appeal and motion to appoint appellate counsel was filed, and the trial court set a return date and appointed the Louisiana Appellate Project to represent Defendant.

Defendant is now before this court asserting one assignment of error.

## FACTS

At trial, Desherica Pierite, the victim, testified that on June 29, 2020, Defendant told her he would drive her to work. Instead of driving her to Wal-Mart, Defendant drove to Ms. Pierite's father's home in Hessmer. After arriving at the home, Defendant grabbed his gun and left the vehicle. At some point, Pierite got out of the vehicle and was near her father's shed when she "felt my [left] leg go off." She was then struck in her right leg. Ms. Pierite testified that she had been shot in each leg and was laying on the ground until Defendant picked her up and placed her in the back seat of the vehicle. At some point, law enforcement caught up with Defendant and found both Defendant and Ms. Pierite inside the vehicle. Defendant was taken into custody and medical assistance was provided to Ms. Pierite.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). On review, we find no errors patent.

**ASSIGNMENT OF ERROR**

In Defendant's sole assignment of error, he asserts there was insufficient evidence to prove beyond a reasonable doubt the "serious bodily injury" element of aggravated second degree battery. Defendant asserts the State provided no evidence of obvious disfigurement, unconsciousness, or loss of impairment of the function of a body part, organ, or mental faculty. Defendant submits that while the victim testified she was in pain, the State failed to prove that the pain was extreme, as required by the enhanced statute.

Defendant readily submits the evidence at trial was sufficient to prove that the victim received a battery by the use of a firearm, that the battery was without the victim's consent, and that Defendant was the person who committed the battery upon the victim. Defendant maintains the only remaining element is whether the injuries suffered were severe enough to satisfy the definition of "serious bodily harm." Defendant argues the State failed to prove the required harm. Defendant notes Detective Michael Cammack, one of the officers who arrived at the scene, testified that he could see the victim's injury on her left side and described the injury as bullet holes in her legs and thigh along with blood in the backseat of the car, but Defendant asserts there was no medical testimony offered at trial as to the extent of Defendant's injuries. Defendant maintains that mere conjecture alone cannot sufficiently satisfy the "second degree" element of the offense.

2

In support of his argument, Defendant cites to this court's decision in *State v. Broussard*, 09-1012 (La.App. 3 Cir. 4/7/10), 33 So.3d 1036. Defendant notes that in *Broussard*, the issue of sufficiency as to the "second degree" element was raised as an alternative issue before the court. Defendant further notes that the victim in *Broussard* had bruises and bumps on her face and head, and there was testimony that she had difficulty speaking due to her injuries. However, the victim was not asked about her injuries and no medical records were introduced. This court held, that since there was no testimony that the victim lost consciousness or suffered disfigurement, permanent disability, protracted loss or impairment of the function of a member, organ, or mental faculty or substantial risk of death, the State was required to prove the victim suffered extreme physical pain. *Id.* This court further held that the State failed to prove the victim suffered extreme physical pain because the victim was not asked about her injuries, no medical evidence was submitted, and the extent of her injuries was unknown. *Id.*

Defendant also cites the supreme court's decision in *State v. Helou*, 02-2302 (La. 10/23/03), 857 So.2d 1024, where the court held that a punch in the nose, without more, was insufficient to prove extreme physical pain. Defendant claims that *Helou* involved a beating where the witnesses described puddles of blood on the ground around the victim, who was also covered in blood. The court held:

> The State submits that we must infer from the amount of bleeding that the victim suffered a "severe bodily injury." This Court finds that the presence of blood alone does not satisfy the "serious bodily injury" element of second degree battery. Our jurisprudence demonstrates many cases where the State proved the "serious bodily injury" element of second degree battery. Some examples are: 1) *State v. Abercrumbia*, 412 So.2d 1027 (La. 1982), where the defendant hit the victim with boards across his head, neck, and arm, causing a "deep cut over his right eye;" 2) *State v. Robinson*, 98-0883 (La. App. 3d Cir. 12/9/98), 723 So.2d 500 *writ denied*, 99-0658 (La. 6/25/99), 745 So.3d 1187, where the defendant knocked the victim to the ground

and repeatedly kicked and hit her until she "kind of lost her senses for a minute;" the victim had bruises and contusions over the entire extent of her body, which left significant scars and lacerations on her nose; and 3) *State v. Robinson*, 549 So.2d 1282, 1285 (La.App. 3d Cir. 1989), where the defendant stabbed the victim twice with a large, folding knife.

There are other cases which indicate that less substantial injuries may also constitute "serious bodily injury." *See State v. Young*, 00-1437, pp. 9-10 (La. 11/28/01), 800 So.2d 847, 852-853, where the victim suffered a bloody nose, tenderness in hyoid area below the larynx, and complained of pain at incision in his lower abdominal area. The physician testified that the defendant's act of choking the victim could have resulted in substantial risk of death, and three months after the attack, the victim continued to have throat problems; *State v. Diaz*, 612 So.2d 1019, 1022-1023 (La.App. 2d Cir. 1993), where the defendant broke the victim's jaw during a group fight; *State v. Mullins*, 537 So.2d 386, 391 (La.App. 4th Cir. 1988), where a 6 foot tall defendant punched a 5'5 girlfriend, breaking her nose; *State v. Legendre*, 522 So.2d 1249, 1251 (La. App. 4th Cir. 1988), *writ denied*, 523 So.2d 1321 (La. 1988), where the defendant raised the victim over his head and smashed her to the floor, rendering her momentarily immobile and requiring a brief hospitalization followed by outpatient treatment leading to a loss of employment for several weeks; *State v. Accardo*, 466 So.2d 549, 552 (La.App. 5th Cir. 1985), *writ denied*, 568 So.2d 1204 (La. 1985), where a 17-year-old female victim was struck on the head by the defendant with either his first or a blackjack, causing the side of her face to swell.

After a careful review of LSA-RS 14:34.1 and the related jurisprudence, we find that in the case *sub judice*, the State failed to offer any evidence of "extreme physical pain" by way of testimony from the fact witnesses. Nor do we have testimony from medical witnesses or medical records, which would prove this factor. Rather, the evidence present, dealt solely with the amount of blood the victim lost. The record demonstrates that at trial the State's direct examination of its witnesses completely avoided the subject of pain. We cannot infer that the loss of blood is tantamount to "extreme physical pain." We also cannot infer that a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery.

There was no explanation of what medical services were provided to the victim. Because the State failed in its burden of proof, any conclusion by the jury as to the pain suffered by the victim *was* simply a guess on the jury's part, since the State failed to offer any evidence on the issue. Simply put, because the jury had to infer the victim's pain, the State failed to prove beyond a reasonable doubt that the victim, in fact, suffered "extreme physical pain" as required by the

statute. Accordingly, we conclude that the evidence is insufficient to establish the defendant's conviction for second degree battery.

*Id*. at 1028-29.

Defendant also directs this court's attention to *State v. Stowe*, 93-2020 (La. 4/11/94), 635 So.2d 168, where the supreme court found the evidence supported a finding of extreme physical pain. In *Stowe*, the victim, an officer, testified that he suffered a great deal of pain to the point of going numb, had difficulty seeing, and had a large amount of blood on his face. *Id.* The officer further described his eye as being swollen and almost shut, having knots on his head, and suffering headaches that lasted for about two weeks. Defense counsel countered that the doctor noted that the victim stated he was not in pain and the defendant's wife testified that the officer had told her he was not hurt, but still the supreme court found the evidence supported a finding of extreme physical pain. *Id*.

Defendant asserts that in cases where sufficient evidence was found, the State had presented testimony, medical records, or both, to prove the "serious bodily injury" element of the offense. Defendant asserts that in the instant case, the State offered very little evidence as to this element. Defendant notes at trial the victim answered that she was in pain but did not elaborate as to the extent of her pain. Defendant further asserts there was no evidence admitted as to the medical services or treatment the victim received, and the victim did not display any scarring or disfigurement to the jury. Additionally, while the victim implied a possible loss of use of her legs following the shooting, the officers testified that she exited the car on her own volition.

Defendant maintains that "protracted loss of impairment of the function of a bodily member" was not proven beyond a reasonable doubt nor was "protracted

and obvious disfigurement." Therefore, "extreme physical pain" was the only basis for the enhanced crime, and in order to satisfy this portion, the jury had to find that the level of pain was extreme, but the testimony and pictures of the victim's blood and legs were not sufficient in proving the victim suffered "extreme physical pain." Thus, "serious bodily injury" was never proven beyond a reasonable doubt, as required in a conviction for aggravated second degree battery.

In conclusion, Defendant asserts the evidence was insufficient to uphold the conviction for aggravated second degree battery, therefore his conviction and sentence should be vacated and set aside. Defendant admits the evidence supports the lesser offense of aggravated battery, thus a verdict of guilty for aggravated battery should be entered and the case remanded for sentencing.

In brief, the State argues that even though no medical evidence was presented at trial, when viewing the evidence in a light most favorable to the prosecution, the jury could have reasonably concluded the victim suffered serious bodily injury. The State argues this conclusion is based on the testimony that the victim was shot twice in her legs, causing her to become weak with blood gushing out of the wounds. The State maintains that medical evidence was not necessary because the evidence and testimony overwhelmingly established "serious bodily injury" suffered by the victim. The State notes the victim's testimony that she was rendered unable to have full use of her legs and had to rely on her upper body strength to pull herself into the vehicle, as well as the photographs depicting the wounds in the victim's legs, including torn flesh, bullet holes, and pools of blood. The State also notes that emergency services were called to render aid to the victim.

The State directs this court's attention to *State v. Hernandez*, 96-115, p. 6 (La.App. 4 Cir. 12/18/96), 686 So.2d 92, 96 (quoting *State v. Legendre*, 522 So.2d

6

1249, 1251 (La.App 4 Cir.) *writ denied*, 523 So.2d 1321 (La.1988) (quoting *State v. Thompson*, 399 So.2d 1161, 1168 (La.1981))), where the fourth circuit noted that the term "'extreme physical pain'" refers to "'a condition which most people of common intelligence can understand; it is considered subjective in nature and susceptible to interpretation.'" The *Hernandez* court upheld a conviction of second degree battery where the evidence showed that the victim was struck by an electrical cord, which resulted in a laceration on the victim's shoulder and cuts to her face and fingers. The court found that the disfigurement was obvious and supported the defendant's conviction. *Id.*

The State contends that in the instant case the testimonial evidence along with the photographic evidence "clearly and obviously illustrated that the Victim had two holes in her legs as a result of being shot, as well as an exit wound from the bullet(s)." The State argues the victim suffered the following serious bodily injuries: protracted and obvious disfigurement, extreme physical pain, loss or impairment of a bodily function, and substantial risk of death since the victim was shot by Defendant at close range with a handgun. The State maintains that anytime "a gun is fired and strikes a person, there is an obvious and substantial risk of death, which does not require the testimony of a medical expert, but, rather, allows the jury to use their common sense to reach said conclusion."

The State also directs this court's attention to *State v. Robertson*, 98-883, p. 7 (La.App. 3 Cir. 12/9/98), 723 So.2d 500, 505, *writ denied*, 99-658 (La. 6/25/99), 745 So.2d 1187, where the victim was knocked to the ground and repeatedly kicked and hit until she "kind of lost her senses." This court noted that the victim received a direct blow to the head and suffered bruises and contusions over the entire extent of her body and a large laceration on her forehead and scalp. *Id.* This

7

court indicated that the "severity of the injuries speak for themselves" as to proving the defendant's intent, and this court affirmed the defendant's conviction for second degree battery. *Id.* at 503. In the instant case, "[t]he State adopts and echoes this holding as gunshot wounds, causing a loss of blood, weakness, as well as entry and exit wounds do not require a medical expert for a jury to reasonabl[y] conclude that such constitutes serious bodily injury."

The State maintains the provisions of La.R.S. 14:2(C) defining "serious bodily injury" have been interpreted to have a subjective component, thus the types of injuries listed are not an exclusive list of "serious bodily injury." The State argues that in *Robertson* the victim was hit and kicked, and this court found serious bodily injury, so when a victim is shot twice, that must be deemed to be serious bodily injury as well.

The State notes that Defendant cites to *Helou,* 851 So.2d 1024, for support, but the State asserts *Helou* is distinguishable from the instant case. The State argues that the only evidence presented in *Helou* was testimony that the victim's nose was bleeding, without any other evidence submitted. The holding suggests that blood alone is not sufficient to prove serious bodily injury, but "[t]he instant case involves multiple gunshot wounds, testimony as to pain, loss of full use of extremities and an ambulance having to be dispatched to provide emergency treatment [at] the scene."

The State indicates that the facts of the instant case resemble the facts from *State v. Miner*, 14-939 (La.App. 4 Cir. 3/11/15), 163 So.3d 132, *writ denied*, 15-651 (La. 2/26/16), 187 So.3d 466, where the victim indicated that he suffered headaches after being struck in the head and sustained a laceration that required staples and an overnight hospital stay. The fourth circuit held that while no

8

medical testimony was introduced, a jury could reasonably infer that the injury caused extreme physical pain to the victim. *Id.* The fourth circuit upheld the defendant's conviction for second degree battery.

Finally, the State cites to *State v. Robinson*, 549 So.2d 1282 (La.App. 3 Cir. 1989), where the victim was stabbed twice with a large folding knife. Even though there was no medical testimony, the jury was found to be able to reasonably infer "serious bodily injury" from the videos of the bandaged victim, along with his testimony that he sustained a laceration which required staples. The State argues that in both *Robinson* and the instant case, the victims were injured by dangerous weapons and needed medical treatment. The State asserts that just like in *Robinson*, this court should also concur that a "serious bodily injury" occurred here.

The general analysis for insufficiency of the evidence claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The record must show that the State proved all the elements beyond a reasonable doubt. Louisiana Revised Statutes 14:34.7(A) defines aggravated

second degree battery as "a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." Battery is defined in La.R.S. 14:33 as "the intentional use of force or violence upon the person of another." As stated above, Defendant does not dispute that he committed a battery with a dangerous weapon. He is only disputing whether the "serious bodily injury" element was proven beyond a reasonable doubt. Under the definitions in La.R.S. 14:2(C), "'serious bodily injury' means bodily injury which involves unconsciousness; extreme physical pain; protracted and obvious disfigurement; protracted loss or impairment of the function of a bodily member, organ, or mental faculty; or a substantial risk of death." In addressing whether the State satisfied its burden of proving beyond a reasonable doubt that Defendant inflicted "serious bodily injury," we review testimony and evidence at trial.

At trial, the State called Desherica Pierite, the victim, to the stand. Ms. Pierite testified that Defendant offered to drive her to work, and she was riding in the front passenger seat until she was shot. Ms. Pierite testified that they drove to her father's house in Hessmer, and at this point, Defendant readied his gun and fired. Ms. Pierite said, "[O]ne shot let off and then I was outside my dad's shed and then I felt my leg go off and then the next shot hit my right leg." Ms. Pierite said three rounds were fired but only two struck her, one in her left leg and another in her right leg. Ms. Pierite said she was outside the vehicle when this happened, and she was "laying on the ground afterwards and pulling myself away from the vehicle." Ms. Pierite testified she was in pain and when she looked at her legs, she saw blood "shooting out of them." She testified that Defendant helped her back into the car by picking her up as she used her upper body. She testified that she was crying and pleading with him to stop. She also testified that she was not able

10

to get out of the back seat or open the door because she was weak. She stated she was on the phone with Defendant's sister, Jenny, and they drove to Jenny's house, and an ambulance was called.

The State then called Officer James Whittington to the stand. Officer Whittington said he responded to the scene and found Defendant in the driver's seat and the victim in the back seat. Officer Whittington said the victim exited the vehicle, but he did not observe her too much initially. Officer Whittington testified that after securing Defendant he spoke with the victim who was being provided medical attention by another officer. Officer Whittington stated that he observed "several gunshot wounds it appeared on the subject's legs, what legs I'm not sure. But multiple gunshot wounds to her legs." Officer Whittington testified that there was some blood and that he took photographs of the scene. Officer Whittington stated, "The top photographs are going to be what appeared to be an exit wound from a single gunshot wound with the blood around it." Officer Whittington said he believed the exit wound to be on the left side of the calf area. Officer Whittington continued, "The bottom photograph which was already wrapped up by personnel tending to her would have been an exit wound as well I believe. I didn't look at the wound before it was wrapped up so the extent of that wound I'm not sure." Officer Whittington testified that he dispatched an ambulance to his location after securing the scene. As to the photo of the victim's knee, Officer Whittington said, "The ones to the left on the kneecap was just a graze from one of the shots[.]" Officer Whittington also said that there was blood found across the entire backseat. Officer Whittington testified that there were remnants of a projectile located inside the vehicle, and based on his observation, there were four shots fired total, with the victim being shot at least twice

The State then called Detective Michael Cammack to the stand. Detective Cammack testified that after securing Defendant, Detective Cammack recorded the crime scene with his phone. Detective Cammack testified that he approached the vehicle where the victim was and observed the blood from her wounds. Detective Cammack observed bullet holes in the vehicle and shell casing in plain view underneath the seats.

In *State v. Jackson*, 02-1250, pp. 3-5 (La.App. 3 Cir. 2/5/03), 838 So.2d 841, 844–45, *writ denied*, 03-832 (La. 10/17/03), 855 So.2d 759, this court analyzed what constitutes "serious bodily injury":

> Defendant, Jackson, contends the injuries he inflicted upon Tomlinson do not rise to the level of serious bodily injury within the definition of La.R.S. 14:34.1. To sustain a conviction for second degree battery under the statute, the State must prove beyond a reasonable doubt the injury inflicted "involved unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." *Id.* The term extreme physical pain refers to a condition which most people of common intelligence can understand. *State v. Thompson,* 399 So.2d 1161, 1168 (La.1981). It is considered subjective in nature and susceptible to interpretation. *Id.*

> Medical records indicate Tomlinson had swelling on the left side of his face, an abrasion to his lip and difficulty swallowing. He suffered a dislocated temporomandibular joint and required surgery to repair the injury inflicted by Jackson. Tomlinson testified he was in pain for "a good three weeks" and could not chew or bit[e] down. He testified he had problems eating for four to six weeks.

> In *State v. Hernandez,* 96–0115 (La.App. 4 Cir. 12/18/96); 686 So.2d 92, the court upheld the defendant's conviction for second degree battery when the victim's injuries consisted of a cut to her right eye and nose area, a cut on her shoulder and a cut on her finger. The victim testified the injuries burned.

> In *State v. Accardo,* 466 So.2d 549 (La.App. 5 Cir.1985), *writ denied,* 468 So.2d 1204 (La.1985), the defendant, a twenty-one year old male struck a seventeen year old female on the head with either his fist or a blackjack. The blow caused pain and swelling to the victim's head. The court found the evidence was sufficient to establish

12

the victim suffered "serious bodily injury" within the meaning of the second degree battery statute even though the victim did not lose consciousness and she did not testify she was in extreme physical pain.

In *State v. Helou*, 2002–77 (La.App. 3 Cir. 6/5/02); 822 So.2d 647, this court held the State proved the victim suffered serious bodily injury to his nose even though the victim did not have a broken nose nor did the injury require stitches. The evidence indicated the victim received medical treatment and was given pain medication.

In *Young*, 00-1437 [(La. 11/28/01),], 800 So.2d 847, the supreme court affirmed a jury verdict finding the jury could reasonably have concluded the defendant intended to inflict "serious bodily injury" when he choked the victim. The victim testified he coughed frequently, cleared his throat and had trouble talking. The court found the State proved the defendant intended to cause "impairment of the function of a bodily member."

Mr. Tomlinson's medical records reflect he had a dislocated jaw for which he received various pain medications. Surgery was required to repair the injury and he experienced pain and was unable to chew or bite down for several weeks following the incident. Although Tomlinson was not rendered unconscious, the record supports the conclusion that he did suffer extreme physical pain and protracted impairment of a bodily function within the meaning of the statute. We conclude the State proved the elements of second degree battery and, therefore, affirm the Defendant's conviction.

The element of "serious bodily injury" requires "extreme physical pain." La.R.S. 14:2(C). "Serious bodily injury" also includes "protracted loss or impairment of the function of a bodily member." The victim testified she felt her "leg go off." When asked whether she was in pain, the victim said, "Yes, ma'am." However, the victim did not elaborate on this pain. The victim testified that she observed blood "shooting out" of her legs and that Defendant had to pick her up and put her in the car. She testified that she was crying and pleading with him to stop, and she was not able to get out of the back seat or open the door because she was weak.

When viewing the evidence in the light most favorable to the prosecution, it is reasonable to conclude that the victim suffered "serious bodily injury." There

13

was testimony and photographic evidence that the victim was shot twice, once in each leg, by a handgun; blood was coming from those wounds and was found in the vehicle; the victim lost use of her legs and had to use her upper body to pull herself into the vehicle; and she was tended to by emergency personnel. We find the facts sufficient to prove "serious bodily injury" under the statute.

## CONCLUSION

This court finds that there was sufficient evidence to prove beyond a reasonable doubt that Defendant committed aggravated second degree battery. Defendant's conviction and sentence is affirmed.

**AFFIRMED.**

14