# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-1012

STATE OF LOUISIANA

VERSUS

PAUL JACOBY BROUSSARD

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 121791
HONORABLE PATRICK MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**VACATED, RENDERED, AND REMANDED.**

Mark O. Foster
Louisiana Appellate Project
P.O. Box 2057
Natchitoches, LA 71457
Counsel for Defendant-Appellant:
 Paul Jacoby Broussard

Michael Harson
District Attorney
Keith Stutes
Assistant District Attorney
P.O. Box 3306
Lafayette, LA 70502
Counsel for Appellee:
 State of Louisiana

**PAINTER, Judge**.

Defendant, Paul Jacoby Broussard, appeals his conviction for second degree battery. For the reasons set forth herein, we overturn the conviction for second degree battery, render judgment finding Defendant guilty of simple battery, and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

Defendant was convicted of committing a second degree battery upon his girlfriend, Alydia Menard.

Defendant was charged by bill of information filed on October 7, 2008, with second degree battery, in violation of La.R.S. 14:34.1. On October 10, 2008, Defendant entered a plea of not guilty. Defendant waived his right to trial by jury on January 22, 2009, proceeded to trial before the bench, and was found guilty as charged. On May 21, 2009, Defendant was sentenced to serve five years at hard labor and ordered to pay a fine of $2,000. A Motion to Reconsider Sentence was filed on May 26, 2009, and denied on May 28, 2009.

A Motion for Appeal and Designation of Record was filed on June 11, 2009. The motion was subsequently granted. Defendant is now before this court asserting two assignments of error. Therein, he contends the evidence was insufficient to support his conviction.

## DISCUSSION

*Errors Patent*

1

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

*Sufficiency of the Evidence*

In his first assignment of error, Defendant contends the evidence was insufficient to support any conviction for battery. In his second assignment of error, Defendant contends the evidence was insufficient to support a conviction for second degree battery.

Louisiana Revised Statutes 14:34.1 provides that:

> Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts **serious bodily injury**.
>
> For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
>
> Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.

(Emphasis added).

The Louisiana Supreme Court has held that the phrase "extreme physical pain" as used in the statute is not unconstitutionally vague since it "describes a condition which most people of common intelligence can understand." *State v. Thompson*, 399 So.2d 1161, 1168 (La.1981).

> When considering a claim of insufficient evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Smith*, 600 So.2d 1319 (La.1992). It is not the function of an appellate court to assess credibility or re-weigh the evidence. *State v. Rosiere*, 488 So.2d 965 (La.1986).

According to *Jackson v. Virginia*, *supra*, the State has the burden of proving each element of the crime beyond a reasonable doubt. As stated above, the State must prove that: 1) the defendant committed a battery;[3] 2) without the victim's consent; and 3) the victim suffered serious bodily injury.

_____
[3]LSA-R.S. 14:33 provides that a battery is the intentional use of force of violence upon the person of another.

*State v. Helou*, 02-2302, pp. 4-5 (La. 10/23/03), 857 So.2d 1024, 1027-28.

Chassidy Menard, Alydia Menard's sister, testified that she called Defendant's phone on August 10, 2008, and he answered. Chassidy heard Alydia in the background saying, "Stop, Jacoby." Defendant then stated that Alydia could not speak to her and that he had "just beat the fuck out of her." Defendant then hung up.

Chassidy subsequently went looking for Alydia at the homes of Baby Menard and Defendant's brother. After being told that Alydia was not at either place, Chassidy called the police. Chassidy later saw Alydia at the hospital. Photographs of Alydia's injuries were introduced into evidence at trial.

Chassidy testified that she had seen Alydia the previous night and that Alydia was fine at that time. She further stated that she spoke to Alydia the following morning and did not detect anything in her voice that would suggest she had trouble talking because her face was swollen or her lips were bruised. She next saw Alydia that afternoon at the hospital. Between the date of the incident and trial, Alydia told Chassidy that Defendant did not cause her injuries.

Corporal Jason Airhart testified that he was dispatched to a residence on August 10, 2008. He was brought inside the house and to the bedroom where Defendant and Alydia were supposed to be located. The man accompanying Corporal

Airhart tried to open the door, but it was locked. The man eventually pulled the doorknob off and entered the room. Defendant got out of bed, and Officer Courtney Smith entered the room to speak to Alydia, who was in bed. When Defendant stepped out of the room, Corporal Airhart noticed what appeared to be dried blood on his shirt.[1] Defendant had no injuries to his body. However, Alydia had fresh cuts and severe bruising to the face. Corporal Airhart further testified that he had "no idea the extent of her injuries," but that he thought she should receive medical treatment. Corporal Airhart testified that it was difficult to understand Alydia because of her injuries and that her speech was slurred. He was worried that she might have a concussion or a brain injury.

The record reflects that Alydia gave Corporal Airhart several different stories about what happened to her including one about fighting with some girls the previous day. Corporal Airhart testified that Alydia never told him that Defendant hit her. Alydia's story kept changing, and she did not identify the person with whom she claimed that she fought.

Sergeant Ricky Rees testified that he photographed Alydia at the scene and transported her to the hospital. Alydia told Sergeant Rees several different stories about what happened to her. She told him that she was asleep and woke up like that. She also told him that she had been beaten by some unknown females on the street. Alydia never implicated Defendant when speaking to Sergeant Rees. However, he overheard a conversation at the hospital wherein she implicated Defendant.

Sergeant Rees stated that he could not leave Alydia unattended because of the extent of the lumps on her head. He further testified that he was stunned by the

---

[1]Corporal Airhart did not know if the shirt had been tested and did not know how long the substance had been on the shirt.

difference in Alydia's appearance on the date in question when compared with that on her identification card, which was issued eighteen months earlier.

Officer Courtney Smith testified that when she encountered Alydia at the residence, Alydia kept her face covered with a blanket. After Officer Smith asked several times, Alydia revealed her face. Officer Smith testified that the bruises on Alydia's face were a lot darker than what was depicted in the photographs admitted into evidence.

Alydia Menard testified that on August 10, 2008, she was dating Defendant. On that date, she and Defendant laid down to take a nap, and one of them locked the door. Police later arrived, waking her up.

Alydia indicated that she never told Sergeant Rees that she woke up with the bruises. She testified that she told him she fought with several girls the night before and did not know their names.

Alydia additionally testified that Defendant spoke to her sister but that Alydia did not know it was her sister at the time Defendant received the call. She stated that she did not say, "Stop it Paul. Don't do that, Paul," while Defendant was on the phone. Additionally, she said that she did not remember Defendant saying that he had beaten her.

Alydia further testified that Defendant did not cause the injuries depicted in the photographs introduced by the State. She told police the same thing. She went to the District Attorney's Office in September of 2008, and requested that the charges against Defendant be dismissed. She further testified that she and Defendant had been together for three years, "and things he might have been guilty of in the past . . . but he - - this incident was not him."

Upon questioning, Alydia admitted that her mouth and eyes were swollen, that she had blue lumps on her forehead and that she needed, but did not want, to go to the hospital.

Defendant asserts that the State did not exclude all reasonable possibilities that someone other than him inflicted the injuries upon Alydia. He further asserts there was no evidence, other than photographs, regarding the extent or severity of her injuries. Defendant admits it is possible to obtain a battery conviction without the victim's testimony. However, he argues that the only evidence that could possibly support the conviction is Chassidy's testimony that she heard Alydia tell Defendant to stop and his remarks that he had beaten her. Defendant submits that this evidence is not sufficient to support his conviction because the State relied solely on photographs to prove the extent of Alydia's injuries.

Defendant asserts that in the event this court finds the evidence was sufficient to prove he committed a battery upon Alydia, the evidence was not sufficient to prove it was a second degree battery.

The State asserts that Defendant's statement that he beat Alydia proves he committed a battery upon her. The State contends that the trial court did not find the hypothesis that Alydia was injured in a fight with several girls to be reasonable. The State further asserts that Alydia's statement, "Stop Jacoby," provided proof that the battery was committed without her consent. Further, Alydia suffered serious bodily injury, which was proven by the bruising and contusions to her face and head as depicted in the photographs admitted at trial. The State contends that those injuries rendered her "despondent" to questioning, causing an inability to communicate coherently with police and hospital personnel. We note that there is no evidence in

6

the record regarding Alydia's ability to communicate with hospital personnel. The State then discusses Alydia's injuries as follows:

> The determination by the trial court that the victim suffered "serious bodily injuries" was based, in part, upon circumstantial evidence. No reasonable hypothesis is offered nor exist[s] in the record to suggest that the victim, reasonably, did not suffer "extreme physical pain". The direct and circumstantial evidence regarding the injuries suffered by the victim at the hand of the defendant was sufficient evidence to sustain the decision of the trial court. It is respectfully submitted that the trier of fact was reasonable in concluding that the violent blows to the face, mouth, lips and eyes of the victim inflicted with such force as to cause immediate and obvious disfigurement, loss of blood, and disorientation and inability to speak clearly, was sufficient to be "extreme physical pain" within the ordinary experience and common intelligence of the trier of fact.

There is nothing in the record regarding "immediate" disfigurement or loss of blood by Alydia. Sergeant Rees testified that she did not look like she did in her identification dated eighteen months earlier, but he did not elaborate. Additionally, there was suspected blood on Defendant's shirt, but it was not tested. Further, Alydia did not testify that there was any bleeding as a result of her injuries.

Although Alydia testified that Defendant did not inflict the injuries she suffered, Chassidy testified that Defendant said that he beat Alydia, and Sergeant Rees testified that he overheard Alydia implicate Defendant. Based on the verdict rendered, the trial court apparently chose to believe that Defendant struck Alydia. This court will not second-guess that credibility determination. Therefore, we find that the State proved Defendant committed a battery upon Alydia.

The State was further required to prove that Defendant caused serious bodily injury. Louisiana Revised Statutes 14:34.1 defines "serious bodily injury" as involving: "unconsciousness, extreme physical pain or protracted and obvious

7

disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death."

In the case at bar, there was no testimony that Alydia lost consciousness and no evidence of disfigurement or permanent disability; protracted loss or impairment of the function of a member, organ, or mental faculty; or a substantial risk of death. Therefore, the State was required to prove that Alydia suffered extreme physical pain.

Alydia was not asked about her injuries and, although she sought medical treatment, no medical evidence was submitted. Corporal Airhart testified that Alydia had fresh cuts and severe bruising to the face. He had no idea of the extent of her injuries but thought she should receive medical treatment. He also testified that it was difficult to understand her because of the injuries. Sergeant Rees would not leave Alydia unattended due to the lump on her head, and he was stunned at her appearance when compared with that from eighteen months earlier. Further, Officer Smith testified that the bruises on Alydia's face were darker than those depicted in the photographs admitted by the State.

Accordingly, we find that the State failed to prove Alydia suffered extreme physical pain and, therefore, failed to prove that Defendant committed second degree battery.

However, while the evidence was insufficient to uphold a conviction of second degree battery, it is sufficient to support a conviction for simple battery. Under La.Code Crim.P. art. 814(A)(15), simple battery is an authorized responsive verdict to a charge of second degree battery. A battery is defined as "the intentional use of force or violence upon the person of another." La.R.S. 14:33. Louisiana Revised

8

Statutes 14:35 defines simple battery as a "battery committed without the consent of the victim."

As in *State v. Vidaurri*, 05-742 (La.App. 3 Cir. 12/30/05), 919 So.2d 803, *writ denied*, 06-573 (La. 10/27/06), 939 So.2d 1270, no evidence even remotely suggests that Alydia consented to the attack. *See also State v. Odom*, 03-1772 (La.App. 1 Cir. 4/2/04), 878 So.2d 582, *writ denied*, 04-1105 (La. 10/8/04), 883 So.2d 1026. Therefore, we vacate Defendant's conviction for second degree battery, we render a conviction for simple battery, a statutory responsive verdict pursuant to La.Code Crim.P. art. 814(A)(15), and we remand the case for resentencing.

## CONCLUSION

For these reasons, Defendant's conviction for second degree battery is overturned. Judgment is rendered finding Defendant guilty of simple battery. The case is remanded to the trial court for resentencing.

**VACATED, RENDERED, AND REMANDED.**