Judge Daniel L. Dysart
Defendant, Johnquell Bibbins, appeals his conviction of second degree battery and the sentence imposed. After our review of the record, and for the reasons that follow, we affirm both the conviction and the sentence.
FACTS AND PROCEDURAL HISTORY
By bill of information dated March 13, 2015, Mr. Bibbins was charged with the January 3, 2015 second degree battery of Keith McGuire. At his arraignment on April 8, 2015, Mr. Bibbins pleaded not guilty. At the preliminary hearing, the trial court denied Mr. Bibbins' motion to suppress identification, found probable cause to substantiate the charge against Mr. Bibbins, and set a trial date for June 17, 2015. The matter was continued numerous times (at the requests of both the State and Mr. Bibbins).
Mr. Bibbins was tried before a six member jury on March 13-14, 2017 and was unanimously found guilty of the charge. He filed a Motion for New Trial, which was denied on April 17, 2017. Mr. Bibbins then waived the sentencing delays and was sentenced on April 21, 2017 to five years at hard labor with credit for time served. At that time, the State filed a multiple bill of information, and on October 5, 2017, Mr. Bibbins was adjudicated a second felony offender. The trial court vacated his original sentence and re-sentenced him to ten years at hard labor without the benefit of probation or suspension of sentence.
This appeal followed.
Errors Patent
We have reviewed the record for errors patent and found none. See State v. Lambert , 15-0886, p. 5 n.6 (La. App. 4 Cir. 1/20/16), 186 So.3d 728, 733, writ denied , 16-0335 (La. 2/17/17), 216 So.3d 50, and cert. denied , --- U.S. ----, 138 S.Ct. 92, 199 L.Ed.2d 187 (2017).
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, Mr. Bibbins contends that there was insufficient evidence adduced at trial to warrant his conviction of second degree battery, a violation of La. R.S. 14:34.1 A, which defines second degree battery as "a battery when the offender intentionally inflicts serious bodily injury ...." More particularly, Mr. Bibbins maintains that the State failed to prove the element of "serious bodily injury." Mr. Bibbins further argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense.
*139 Our jurisprudence on the applicable standard of review for sufficiency of the evidence challenges is well-settled. We reiterated that standard in State v. Rapp , 14-0633, pp. 5-6 (La. App. 4 Cir. 2/18/15), 161 So.3d 103, 108, quoting State v. Marcantel , 00-1629, p. 8 (La. 4/3/02), 815 So.2d 50, 55 :
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA- C.Cr.P. art. 821 ; State v. Hampton , 98-0331, p. 13 (La. 4/23/99), 750 So.2d 867, 880, cert. denied , 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).
"[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith , 600 So.2d 1319, 1324 (La.1992)." State v. Watkins , 13-1248, p. 13 (La. App. 4 Cir. 8/6/14), 146 So.3d 294, 303, quoting State v. Huckabay , 00-1082, p. 32 (La. App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111. To the contrary, "the touchstone of Jackson v. Virginia [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ] is rationality ...[;] 'irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.' " State v. Alexis , 14-0327, p. 6 (La. App. 4 Cir. 12/3/14), 157 So.3d 775, 778, quoting State v. Wilson , 09-0304, p. 3 (La. App. 4 Cir. 2/17/10), 68 So.3d 1031, 1033 (internal citations omitted).
As this Court explained in State v. Landry , 03-1671, pp. 6-7 (La. App. 4 Cir. 3/31/04), 871 So.2d 1235, 1238-39 :
In a second-degree battery conviction, the State is required to prove the offender committed a battery without the consent of the victim and that he intentionally inflicted serious bodily injury. In second-degree battery cases, the offense requires proof of a specific intent to inflict "serious bodily harm. Serious bodily injury is defined as injury that involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. Specific intent is defined as that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Therefore, the elements of second-degree battery are: (1) the intentional use of force or violence upon the person of another, (2) without the consent of the victim, (3) when the offender has the specific intent to inflict serious bodily injury.
The term "extreme physical pain" as used in the statute refers to "a condition which most people of common intelligence can understand; it is considered subjective in nature and susceptible to interpretation."
Id. (Internal footnotes omitted).
The evidence in this matter reflects that, on January 3, 2015, Mr. Bibbins struck the victim, Keith McGuire, who was at a yard sale, which caused Mr. McGuire to suffer a broken jaw, requiring surgery at Tulane Medical Center. Mr. Bibbins does not dispute this fact, but argues that the injury does not constitute "serious bodily injury" as contemplated by La. R.S. 14: 14:34.1 and that the State failed to prove that he did not act in self-defense. We have carefully reviewed the record in this matter *140 and find that neither of Mr. Bibbins' contentions have merit.
Serious bodily injury
As noted, " La. R.S. 14:34.1 A, requires a showing that a defendant 'intentionally inflict[ed] serious bodily injury,' which is defined to include 'unconsciousness, extreme physical pain or protracted and obvious disfigurement.' " State v. Miner , 14-0939, p. 9 (La. App. 4 Cir. 3/11/15), 163 So.3d 132, 138, writ denied , 15-0651 (La. 2/26/16), 187 So.3d 466. Relying heavily on the case of State v. Helou , 02-2302 (La. 10/23/03), 857 So.2d 1024, and to a lesser degree on State v. Broussard , 09-1012 (La. App. 3 Cir. 4/7/10), 33 So.3d 1036, Mr. Bibbins maintains that he "did not inflict serious bodily injury on Mr. McGuire," noting a lack of medical testimony and a lack of unconsciousness or "protracted or extreme injury." He point to the fact that the incident was "a single, brief encounter." He contends that a lesser verdict of simple battery was warranted under the circumstances of this case.
Helou involved an altercation in which the victim was struck in the nose by the defendant and was treated for a bloody nose. While the defendant was charged with and convicted of second degree battery in the trial court (a ruling which was set aside by Third Circuit), the Louisiana Supreme Court vacated the conviction and entered a conviction of simple battery. In doing so, the Court reviewed several cases on the issue of what constitutes "serious bodily injury," and found that "a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery." Id. , 02-2302, p. 8, 857 So.2d at 1029. The Helou Court noted the following:
Our jurisprudence demonstrates many cases where the State proved the "serious bodily injury" element of second degree battery. Some examples are: 1) State v. Abercrumbia , 412 So.2d 1027 (La.1982), where the defendant hit the victim with boards across his head, neck, and arm, causing a "deep cut over his right eye;" 2) State v. Robertson , 98-0883 (La. App. 3d Cir.12/9/98), 723 So.2d 500, writ denied , 99-0658 (La.6/25/99), 745 So.2d 1187, where the defendant knocked the victim to the ground and repeatedly kicked and hit her until she "kind of lost her senses for a minute;" the victim had bruises and contusions over the entire extent of her body, which left significant scars and lacerations on her nose; and 3) State v. Robinson , 549 So.2d 1282, 1285 (La. App. 3d Cir.1989), where the defendant stabbed the victim twice with a large, folding knife.
Id. , 02-2302, pp. 6-7, 857 So.2d at 1028.
The Broussard case involved an altercation, following which the victim was seen with "fresh cuts and severe bruising to the face" caused by her boyfriend. Id. , 09-1012, p. 4, 33 So.3d at 1038. Finding that the "State failed to prove [the victim] suffered extreme physical pain" the Court concluded that the State likewise "failed to prove that Defendant committed second degree battery" and entered a conviction of the lesser offense of simple battery. Id. , p. 8, 33 So.3d at 1040.
In State v. Jackson , 02-1250 (La. App. 3 Cir. 2/5/03), 838 So.2d 841, a case involving injuries similar to those in this case, a conviction of second degree battery was affirmed. There, the court found that the State established the element of "serious bodily injury" through the victim's medical records which reflected dislocated jaw for which the victim received various pain medications, underwent surgery to repair the injury, and experienced pain. Additionally, the victim was unable to chew or bite down for several weeks following the incident.
*141 In the instant matter, Mr. McGuire testified that Mr. Bibbins "ran up and swung on him," hitting the victim in the face and fracturing his jaw. Immediately after the incident, Mr. McGuire went home but later sought medical attention after he experienced pain when he tried to eat. He was then hospitalized and underwent surgery to repair his fractured jaw. Moreover, unlike Helou and Broussard , here, the State introduced the victim's medical records, which verified the necessity of corrective surgery, the administration of prescription IV pain medication, hospitalization and recovery. Additionally, Mr. McGuire testified about the pain in his jaw and how it prevented him from eating.
The terms "extreme physical pain" as used in the statute refers to "a condition which most people of common intelligence can understand ..." State v. Legendre , 522 So.2d 1249, 1251 (La. App. 4 Cir. 1988), quoting State v. Thompson , 399 So.2d 1161, 1168 (La.1981). A fractured jaw, requiring hospitalization and corrective surgery, as well as the administration of intravenous pain medication during the hospitalization, would certainly meet the statutorily required element of "extreme physical pain" to those of even "common intelligence." Accordingly, we find that the jury's conclusion that Mr. Bibbins intentionally inflicted serious bodily injury on Mr. McGuire is supported by the record, and viewing the evidence in the light most favorable to the prosecution, jury could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
Self-defense
Mr. Bibbins next contends that the State failed to establish "that the alleged second degree battery was not justified beyond a reasonable doubt" given that Mr. Bibbins acted in self-defense. Mr. Bibbins contends that "[t]he State had the burden to rebut self-defense."
Under La. R.S. 14:18, '[t]he fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct." Self-defense, or "[t]he use of force or violence upon the person of another is justifiable under either of the following circumstances" when it is "committed for the purpose of preventing a forcible offense against the person." La. R.S. 14:19 A(1)(a). Our jurisprudence reflects that, when a defendant asserts that he acted in self-defense in a homicide case, the State bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Jefferson , 04-1960, p. 10 (La. App. 4 Cir. 12/21/05), 922 So.2d 577, 587-588.
When a case does not involve a homicide, "the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary." State v. Freeman , 427 So.2d 1161, 1163 (La. 1983). The Freeman Court did not enunciate a definitive rule on the issue of who bears the burden of proving self-defense, stating that "[t]he burden of persuasion in proving self-defense in a non-homicide situation pursuant to La. R.S. 14:19, which entails a subjective as well as an objective inquiry, could arguably, in fairness to the State, be upon the defendant, since a subjective inquiry is involved." Id at p. 1163. However, the Court concluded that it need not resolve the issue, "for irrespective of who bears the burden in this case, and even assuming that the State has the burden of proving beyond a reasonable doubt in this non-homicide situation that defendant did not *142 act in self-defense, we conclude that the State has carried its burden of proof." Id.
This Court has similarly not adopted a firm rule on this issue and noted, in State v. Boudreaux , 08-1504 (La. App. 4 Cir. 9/29/10), 48 So.3d 1144, that cases in this circuit have differed on the issue. However, as in Freeman , the Boudreaux Court concluded that, where the circumstances are such "that viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the defendant did not act in self-defense," it need not make a determination as to which party bears the burden of proof of self-defense. Id. , 08-1504, p. 32, 48 So.3d at 1162.
Mr. Bibbins' claim of self-defense is based on Mr. McGuire's testimony that he "tried to swing at [Mr. Bibbins] first." This statement, however, must be considered in the context of Mr. McGuire's other testimony. Mr. McGuire was consistent and unyielding as to what led him to swing at Mr. Bibbins, although he made no contact. According to Mr. McGuire, he was at a yard sale and he observed Mr. Bibbins drive by in his BMW, stop and exit the vehicle. Mr. McGuire was well familiar with Mr. Bibbins, as he had seen him in the neighborhood.[1] According to Mr. McGuire's testimony, Mr. Bibbins "ran up on [him] ... from around the corner ... look[ing] like he was running to try to attack [him]." Mr. McGuire again testified that "it looked like he was coming to attack [him]" and that because he "can't run cuz' [he has] no cartilage in [his] knees and so, ... when he got close to [him] [he] just tried to swing on him first." However, "[he] missed" and when "[Mr. Bibbins] swung he connected."
When Mr. McGuire was questioned about Mr. Bibbins' claim that he was the aggressor, Mr. McGuire explained:
I don't appreciate nobody running up on me and especially a little teenagers.... I ain't did nothing wrong, but I'm not gonna let anybody just beat me down ....
Based on the circumstances of this case, whether the State bore the burden of proving beyond a reasonable doubt that Mr. Bibbins did not act in self-defense, or whether Mr. Bibbins bore the burden of proving by a preponderance of the evidence that he did act in self-defense, viewing all the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have concluded beyond a reasonable doubt that the defendant did not act in self-defense.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER 2
In his next assignment of error, Mr. Bibbins argues that his conviction should be aside because the trial court erred in allowing evidence or other crimes and bad acts.
The admissibility of evidence of other crimes, wrongs or acts, is governed by La. C.E. art. 404, which provides, in subpart B(1) that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Other crimes evidence, however, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence *143 of mistake or accident ...." La. C.E. art. 404 B(1).
As a general rule, "evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant." State v. Hills , 99-1750, p. 5 (La. 5/16/00), 761 So.2d 516, 520 ; State v. Baudier , 00-1108, p. 6 (La. App. 4 Cir. 5/23/01), 789 So.2d 696, 702. "In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a man of criminal [bad] character, evidence of the commission of other crimes [bad acts] is inadmissible unless the evidence has an independent relevancy besides simply showing a criminal disposition." State v. Rubens , 10-1114, p. 21 (La. App. 4 Cir. 11/30/11), 83 So.3d 30, 46, quoting State v. Lafleur , 398 So.2d 1074, 1080 (La.1981).
We note that "the admissibility of the additional other crimes evidence will not be disturbed absent an abuse of discretion." State v. Altenberger , 13-2518, p. 8 (La. 4/11/14), 139 So.3d 510, 515-16, citing State v. Scales , 93-2003, pp. 4-5 (La. 5/22/95), 655 So.2d 1326, 1330-31.
Prior to trial in this matter, on August 19, 2016, the State filed a Notice of Intent to Use Evidence of Similar Crimes, Wrongs and/or Acts, seeking to admit the other crimes evidence to prove intent and identity. Attached to its Notice were copies of documents, including police reports substantiating the other crimes evidence. During the course of trial, the trial court indicated that the evidence would be admissible. The trial court advised that, with respect to the other crimes evidence, it would provide an appropriate charge during the jury instructions.
At trial, the State introduced evidence through various police officers and detectives of several other arrests and incidents: a February 24, 2008 arrest for possession with intent to distribute marijuana and illegal carrying of a weapon; an April 13, 2008 arrest for shooting during a second-line parade for which he pleaded guilty to aggravated battery and received a five year sentence; a December 17, 2013 arrest for narcotics and parole violations which occurred while Mr. Bibbins was driving a black BMW; four traffic violations (March 27, 2013, December 11, 2014, December 15, 2014 and February 28, 2015) all of which occurred while Mr. Bibbins was driving a black BMW; and an August 3, 2015 shooting.
At the end of trial, the trial court gave the following instructions to the jury with respect to the other crimes evidence:
... the court will read evidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial is to be considered only for a limited purpose and the sole purpose for which such evidence may be considered as to whether it tends to show and then I will say "identity." And again, remember the accused is only on trial for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense....
After our review of the record, we find that the evidence was properly admitted to prove identity.
At trial, Mr. McGuire was clearly reluctant to testify against Mr. Bibbins.[2] When questioned by the State as to how his jaw became broken, Mr. McGuire testified that "[s]ome man attacked me." At *144 trial, he could not recall making a 911 call on the date of the incident, and, when a recording of the 911 call was played for the jury, in which the caller identified himself as "Keith McGuire," Mr. McGuire was asked if that was the 911 call he made. He replied that he couldn't remember because it was more than two years ago. When asked if he could recognize his voice, Mr. McGuire stated, "[n]ot really."
On the 911 call, Mr. McGuire was asked whether he could identify the man who struck him, and he replied, "[n]ot really, I see him around." At trial, Mr. McGuire explained this statement in identifying the man who struck him: "I seen him around the neighborhood. He lives in that neighborhood." In the 911 call, Mr. McGuire also indicated that the man who struck him drives a black BMW.
When questioned about his statement identifying the man who struck him as "Mo," Mr. McGuire indicated that he could not recall making that statement to the officer who interviewed him. He also testified initially that he could not recall making an identification from a line-up at his home of the man who struck him. When the audio recording made during that line-up procedure was played for him, Mr. McGuire identified his voice only by saying that he "guess[ed]" it was his voice because it "sound[ed] like [him]." However, he stated that the recording did not remind him of the line-up procedure because "it was so long ago." While in the recording, he identified the picture of the man who struck him, at trial, when asked if he had made that identification, Mr. McGuire stated "I don't know. It's two years ago." He later testified, again evasively, about who had struck him: "If that's who I identified, that's who broke my jaw."
Mr. McGuire ultimately admitted that he knew Mr. Bibbins' mother (and, had had a few dates with her) and that she had "paid [him] off" so that he would not testify at trial.[3]
Upon further questioning, when asked if he had been able to give the name of the man who struck him to the doctors at the hospital, Mr. McGuire stated "[n]o. Just the name Mo." He then testified that Mo had "run up on me. And then that's when I swung. Cuz' he was running up on me."
Mr. McGuire did not identify anyone other than a man whose nickname is "Mo" as the person who struck him. Accordingly, that identity was not clearly established by Mr. McGuire. By way of the other crimes evidence, the State established that the man nicknamed "Mo" and who drives a black BMW is Mr. Bibbins; without that other crimes evidence, there is a lack of evidence linking the person nicknamed "Mo" with Mr. Bibbins.
As concerns the December, 2013 arrest of Mr. Bibbins, New Orleans Police Department ("NOPD") Detective Walter Edmonds testified that he arrested Mr. Bibbins at his residence, which he indicated was two blocks away from where Mr. McGuire was struck. When he arrived at the residence, he saw a black BMW. During the course of his investigation, Det. Edmonds learned that the BMW was owned by Mr. Bibbins. This evidence corroborates Mr. McGuire's testimony of having seen Mr. Bibbins in the neighborhood.
Similarly, the officers who testified as to Mr. Bibbins various traffic violations identified Mr. Bibbins as the driver of a black BMW.
*145 As to the 2008 shooting at the second line parade, Sgt. Wayne DeLarge testified that, during his investigation, the perpetrator was identified as "Mo." He learned "the real identity" of "Mo" when "the shooting victim identified Mo as one Johnquell Bibbins." Likewise, Det. Joseph Jefferson, who was familiar with Mr. Bibbins from previous encounters also testified that "Johnquell Bibbins goes by the nickname of "Mo."
As concerns the August 3, 2015 shooting, Detective Joseph Jefferson testified that he learned the identity of the shooting suspect as "Mo," who drove a "black luxury vehicle." He ultimately tied the vehicle and the nickname to Mr. Bibbins.
Based on the foregoing, we do not find that the trial court abused its discretion in allowing the other crimes and acts into evidence to establish Mr. Bibbins' identity, particularly given the trial court's limiting jury instruction.
Moreover, even if the trial court erred in allowing the evidence, the admission of other crimes evidence is subject to harmless error analysis. State v. Copelin , 16-0264, p. 22 (La. App. 4 Cir. 12/7/16), 206 So.3d 990, 1006, writ denied , 17-0047 (La. 9/29/17), 227 So.3d 286. The erroneous admission of evidence requires reversal only where there is a reasonable possibility that the evidence might have contributed to the verdict. State v. Ruffin , 11-0135, p. 20 (La. App. 4 Cir. 12/21/11), 82 So.3d 497, 511, citing State v. Casey, 99-0023, p. 13 (La. 1/26/00), 775 So.2d 1022, 1033. "The relevant inquiry is whether the reviewing court may conclude the error was harmless beyond a reasonable doubt ... i.e. was the guilty verdict actually rendered unattributable to the error." Id.
Furthermore, "[a] reviewing court should consider the importance of the evidence to the State's case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State's case." State v. Massey , 11-358, pp. 35-36 (La. App. 5 Cir. 3/27/12), 97 So.3d 13, 36.
In Ruffin , this Court found that testimony from a witness that, "within a week of the shooting, arrived at her doorstep with a gun looking for [one murder victim]" to be harmless error. Id. , 11-0135, pp. 18-20, 82 So.3d at 510. This finding was based on ample other evidence of the defendant's guilt, such as his admission that he shot the victims (even though he claimed self-defense).
Here, Mr. McGuire's unrefuted testimony in this case identifying Mr. Bibbins as the man who punched him and broke his jaw supported the jury's finding Mr. Bibbins as charged. We find, as the Court did in Ruffin , that his conviction for second degree battery was unrelated to the other crimes evidence offered by the State. See also, Copelin , 16-0264, p. 37, 206 So.3d at 1012 ("[c]onsidering the strength of the evidence the State presented at trial against Mr. Copelin, we cannot conclude the jury verdict was attributable to the error of admitting the other crimes evidence").
Nor are we persuaded by Mr. Bibbins' argument that the trial court committed reversible error in failing to give limiting instructions to the jury on each occasion that the State introduced other crimes evidence, citing State v. Miller , 98-0301 (La. 9/9/98), 718 So.2d 960, 962 ("the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced"). The Louisiana Supreme Court in State v. Maise, 00-1158, p. 14 (La. 1/15/02), 805 So.2d 1141, 1151, overruled on other grounds by State v. Bernard , 09-1178, p. 7 (La. 3/16/10), 31 So.3d 1025, 1030, indicated that because the "trial judge charged the *146 jury at the conclusion of trial, ... the procedural deficiency, failure to give the limiting instruction, is not sufficient grounds to warrant reversal." Id. , p. 15, 805 So.2d at 1152. See also , State v. Dixon , 17-422, pp. 7-8 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, 521 (" the limiting instruction before jury deliberations cured the procedural error of the trial court in not giving a limiting instruction at the time the other crimes evidence was introduced").
In the instant matter, the trial court instructed the jury that it "may not find [Mr. Bibbins] guilty of this offense merely because he may have committed another offense." This limiting instruction cured any defect in the trial court's failure to give the same instruction for each other crime or act introduced into evidence.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER 3
In his next assignment of error, Mr. Bibbins maintains that the trial court erred in admitting the incident report and 911 recording because they were not properly authenticated, rendering the evidence inadmissible hearsay. He argues that Officer Walter Powers' testimony that he did not record the 911 call precludes Powers' ability to authenticate the evidence.
At the outset, we note the well-settled principle that "[a] trial court has great discretion in determining whether a sufficient foundation has been laid for the introduction of evidence." State v. Pollard , 14-0445, p. 17 (La. App. 4 Cir. 4/15/15), 165 So.3d 289, 301.
To be admissible at trial, demonstrative evidence must first be authenticated. State v. Green , 10-1355, p. 8 (La. App. 4 Cir. 6/22/11), 69 So.3d 695, 701. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. C.E. art. 901(A). As we indicated in Green , "it must first be established that the object sought to be introduced is more probably than not connected with the case, but a lack of positive identification of demonstrative evidence or its chain of custody goes to the weight of the evidence, not to its admissibility, and the connection of the evidence to the case is a factual matter determined by the trier of fact." Id. , 10-1355, p. 9, 69 So.3d at 701.
La. C.E. art. 901 B(5) provides the following as an example of authentication or identification conforming with the requirements: identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker. Thus, a witness' identification of his voice and that of the defendant "was sufficient to authenticate the recorded conversations." State v. Martin , 13-0115, p. 10 (La. App. 4 Cir. 12/4/13), 131 So.3d 121, 128, writ denied , 14-0004 (La. 6/13/14), 140 So.3d 1186.
Mr. Bibbins concedes the business records exception to the hearsay rule but points out the exception requires that the custodian of records appear at trial to properly authenticate and verify the records, La. C.E. art. 803(6).[4] He argues that *147 the custodian must be able to say that the record, document or recording was made at or near the time it was received, is made and kept in the course of a regularly conducted business activity, and it was the regular practice of that business activity to make and to keep the recordings or record. He further argues that because neither Sgt. Powers nor his department made or kept the incident recalls and 911 records, the recording was not authenticated and its introduction violated the confrontation clause of the Sixth Amendment.
At trial, Sergeant Powers testified that he is employed in the Communications Center of the NOPD. In that capacity, he is a custodian of records for incident recall reports and recorded 911 calls. He testified that all 911 calls received by the department are recorded and assigned an item recall number for future investigative purposes. Each call generates an incident recall report which contains information pertinent to the call - the number called, the date the call was made and the name of the caller. These 911 calls are computerized in the regular course of business and can be generated on request. The calls and incident recalls are then routinely turned over to the NOPD, which maintains the evidence through its regular course of business.
In this case, Sgt. Powers listened to the 911 call and reviewed the incident recall prior to trial. He confirmed the association of the incident report to this case by its item number, indicating that the information in the report corresponded with the 911 call.
More importantly, Mr. McGuire, himself, identified his voice on the 911 calls. Accordingly, there can be no genuine issue as to the authenticity of the calls or the incident recall report. We find no abuse of the trial court's discretion in admitting the 911 call and the incident recall report.
ASSIGNMENT OF ERROR NUMBER 4
In his last assignment of error, Mr. Bibbins maintains that the sentence he received "is excessive, cruel and unusual punishment.[5] Conceding that he did not receive the maximum sentence available, *148 he nevertheless argues that the minimum sentence (of four years, or at the most, six years) "was the most appropriate." His argument focuses on Mr. McGuire's statement that he forgave Mr. Bibbins for the incident, Mr. McGuire's full recovery, and the fact that no weapons were involved in the incident.
This Court recently reiterated the well-settled standard for evaluating an excessive sentence claim:
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o law shall subject any person to ... excessive ... punishment." (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado , 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno , 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann , 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker , 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462, cf. State v. Phillips , 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
State v. Doucette , 17-0501, p. 10 (La. App. 4 Cir. 5/23/18), 243 So.3d 704, 711, quoting State v. Smith , 01-2574, pp. 6-7 (La. 1/14/03), 839 So.2d 1, 4 (emphasis in original).
Our review of the record in this case reflects that the sentence imposed in this case was within the range provided by the legislature. Mr. Bibbins was convicted of second degree battery, which, under La. R.S. 14:34.1, carries a sentence of not more than two thousand dollars or imprisonment with or without hard labor, for not more than eight years or both. His initial sentence of five years at hard labor, thus, fell within the scope of this statute.
As a second felony offender (and at the time of his October 5, 2017 sentencing), La. R.S. 15:529.1 A(1) provided as follows:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Accordingly, in Mr. Bibbins' case, the statute provided a sentencing range of four to sixteen years. The trial court sentenced Mr. Bibbins to ten years, which is well within the statutory limits, and in fact, is six years below the maximum sentence allowed for a conviction as a second offender.
Our jurisprudence reflects that, for legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Soraparu , 97-1027 (La. 10/13/97), 703 So.2d 608 (quoting State v. Sepulvado , 367 So.2d 762, 767 (La. 1979) ).
In State v. Batiste , 06-0875, p. 18 (La. App. 4 Cir. 12/20/06), 947 So.2d 810, 820, this Court further explained that a reviewing court may not set aside a sentence for excessiveness if the record *149 evidences a factual basis for the sentence imposed, even if there has not been full compliance with La. C.Cr.P. art. 894.1 :[6]
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La. C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry , [2003-1671 (La. App. 4 Cir. 3/31/04), 871 So.2d 1235] supra ; State v. Trepagnier , 97-2427 (La. App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in State v. Major , 96-1214, p. 10 (La. App. 4 Cir. 3/4/98), 708 So.2d 813 :
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos , 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, "keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged." State v. Landry , 2003-1671 at p. 8, 871 So.2d at 1239. See also State v. Bonicard , 98-0665 (La. App. 4 Cir. 8/4/99), 752 So.2d 184.
In the instant matter, the trial judge did not articulate any reasons for Mr. Bibbins' sentence. A review of our case law regarding excessive sentences reflects that the overwhelming majority of the cases concern whether the record justifies the imposition of maximum sentences. Here, the trial court did not impose the maximum sentence and, under the circumstances of this case, we cannot say that the trial court abused its broad discretion in doing so.
Mr. Bibbins' sentence is in line with sentences imposed on similarly situated defendants. See State v. Haydin , 17-234 (La. App. 5 Cir. 12/20/17), 235 So.3d 1293 (ten years at hard labor not excessive for second degree battery conviction; defendant was larger in stature than victim and punched her in the face which broke her nose, caused her eyes to swell, knocked her to the ground, and caused her extreme physical pain that required medical attention; defendant received a mid-range sentence, and he was a multiple offender with prior felony convictions); State v. Kirkland , 42,397 (La. App. 2 Cir. 8/15/07), 962 So.2d 1173 (second-felony-offender sentence for second-degree battery of ten years in prison at hard labor was not excessive for a defendant, who was 25 years old, hit 70-year-old victim in his face and caused numerous broken bones and loss of vision, defendant had a significant criminal history, including two prior felony convictions, and at least two of defendant's prior probationary periods were terminated unsatisfactorily).
Here, the victim, Mr. McGuire, a sixty year old man, was at a yard sale and in no way provoked or acted in a manner to precipitate Mr. Bibbins' actions. Mr. Bibbins, then twenty-seven years old, acted in utter disregard for Mr. McGuire's well-being and caused a fractured jaw, which required surgery. We believe that the facts *150 of this case warrant the sentence imposed and that record clearly shows an adequate factual basis for the sentence imposed by the trial court.
Moreover, Mr. Bibbins received a mid-range sentence, six years less than the maximum sentence to which he was exposed.[7]
This assignment of error has no merit.
CONCLUSION
For the reasons set forth herein, we affirm Mr. Bibbins' conviction and sentence.
AFFIRMED

Officer Daniel Oquendo, who was the first responder and interviewed Mr. McGuire while he was in the hospital, testified that Mr. McGuire advised him that "he used to buy drugs from" Mr. Bibbins and that, "he refused to buy" them from him anymore and that Mr. Bibbins "was upset over that."

In fact, the State obtained a material witness bond and had Mr. McGuire arrested and held trial to ensure his testimony at trial.

The admission that Mr. Bibbins' mother had paid him off was made during a recording of a conversation had with his sister while Mr. McGuire was in jail. Mr. McGuire positively identified his voice in that recording.

La. C.E. art. 803 provides, in pertinent part, that:
...[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) Records of regularly conducted business activity . A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule.

We note initially that Mr. Bibbins did not file a motion to reconsider sentence which, as provided by La. C.Cr.P. art 881.1, must be filed within thirty days of sentencing to be preserved for the appeal of any claim as to sentencing. This Court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. State v. Stewart , 04-2219 (La. App. 4 Cir. 6/29/05), 909 So.2d 636, 641. In this case, although Mr. Bibbins did not file a motion to reconsider sentence, the record shows that after the trial judge imposed the multiple offender sentence, defense counsel objected to the sentence. This Court has found that an objection lodged after sentencing was sufficient to preserve the claim of constitutional excessiveness. State v. Robair , 13-0337, p. 8 (La. App. 4 Cir. 1/15/14), 133 So.3d 96, 102, citing State v. Miller , 00-0218, p. 8 (La. App. 4 Cir. 7/25/01), 792 So.2d 104, 111.

La. C.Cr.P. art. 894.1 C requires "[t]he court [to] state for the record the considerations taken into account and the factual basis therefor in imposing sentence."

We further note that there is case law indicating that a defendant's criminal history is arguably sufficient on its own to justify a maximum sentence. See State v. Zeno , unpub. 17-1134 (La. App. 3 Cir. 5/2/18), 2018 WL 2054865. In this case, the record includes the Mr. Bibbins' arrest for possession with intent to distribute marijuana and illegal carrying of a weapon; a 2010 guilty plea to aggravated battery for which he received a five-year sentence; a 2014 guilty plea to possession of marijuana; his involvement in a shooting in 2015; and numerous traffic violations stops.